11-4126.121-RSK                                          March 28, 2012

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT MEYER and GERALD, RICHARDSON | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 4126 |
| HANFT FRIDE, a Professional Association, and WILLIAM M. BURNS, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the court is the motion of defendants Hanft Fride and William H. Burns to dismiss the plaintiffs' complaint. For the reasons explained below, we grant the defendants' motion.

## BACKGROUND

Burns is an attorney and a member of defendant Hanft Fride, an 18-lawyer Minnesota law firm. (Compl. ¶¶ 5-6; Aff. of William M. Burns (hereinafter, "Burns Aff.") ¶¶ 1-2, 4, 6.) In or around 2004, Burns was introduced to plaintiffs Scott Meyer and Gerald Richardson, both Illinois residents, by Burns's then-client, Larry Hutchinson. (See Compl. ¶¶ 3-4; Burns Aff. ¶ 14.) Hutchinson, identified in the complaint as a "businessman and real estate entrepreneur" (Compl. ¶ 11), is apparently a South Carolina resident. (See Burns Aff. ¶ 14 (stating that he "believe[s]" that Hutchinson is a South Carolina resident); see also Order,

<u>Richardson v. Hutchinson</u>, No. 10 CH 21301 (Ill. Cir. Ct. 2010),
attached as Ex. B to Pls.' Resp. ("Defendants Larry and Janet
Hutchinson initially claimed to be Florida residents, although they
own and now reside in a home in South Carolina.").) Between 2004
and 2007, Hutchinson, Meyer, and Richardson undertook three
separate Florida real-estate ventures following the same general
business plan: the parties would finance and construct a
residential home in Florida and sell it for a profit. (<u>See</u> Compl.
¶¶ 11, 15, 21.) They retained Burns and Hanft Fride to form
investment vehicles for each project: Western Lake, LLC, Vermillion
Point, LLC, and H & M Partners of Watercolor, LLC ("H&M Partners"),
all Florida limited liability companies (collectively, the "Florida
LLC's"). (<u>Id.</u> at ¶¶ 11-24.) Hutchinson owned 50% of each entity
indirectly through his ownership of separate limited partnerships;
Meyer (along with his wife) directly owned 50% of Vermillion Point,
and indirectly owned, through M5 Capital, LLC, 25% and 50% of
Vermillion Point and H&M Partners, respectively. (<u>Id.</u> at ¶¶ 13, 18,
23.) Richardson invested in Vermillion Point, only, directly
owning 25% of that entity. (<u>Id.</u> at ¶ 18.) Meyer and Richardson
allege that they obtained financing for Vermilion Point and H&M
Partners in their own names, "[c]onsistent with Burns'
recommendation." (<u>Id.</u> at ¶ 19 (alleging that Richardson is
personally liable on a $2.1 million mortgage on the Vermillion
Point property); ¶ 24 (alleging that Meyer is personally liable on

a $400,000 mortgage on the H&M property).) They also allege that they made substantial capital contributions and loans to the Florida LLC's. (See id. at ¶ 14 (Meyer contributed $818,799.24 in capital and loans to Western Lake); ¶ 20 (Meyer and Richardson each contributed $363,229 in capital and loans to Vermillion Point).)

The parties' real-estate ventures eventually went sour. The plaintiffs allege that Hutchinson breached his obligations to them by failing: (1) to construct the Western Lake house within the agreed budget, and unilaterally increasing the loan amount to cover the extra costs; (2) to pay construction interest on the Western Lake project, as agreed; and (3) to make capital contributions to Vermillion Point and H&M Partners. (See id. at ¶¶ 26-31.) The parties' disputes have spawned three lawsuits, not including this one. (See id. at ¶ 34.) Through discovery in those cases the plaintiffs obtained documents that they allege show that Burns and Hanft Fride elevated Hutchinson's interests above the plaintiffs' interests. (See id. at ¶¶ 35-43.) The complaint details the defendants' alleged misconduct with snippets of correspondence between Burns and Hutchinson. (See id. at ¶ 42.) These excerpts are difficult to decipher, as the complaint provides very little context. (See, e.g., id. ("On October 13, 2009, Hutchinson wrote to Meyer about various issues, and copied Burns. Burns applauded Hutchinson: 'This was the perfect answer. My understanding is that you are going to draft the letter for me to send to his attorney

- 4 -

attaching information.'"").)  But generally speaking, they give the
impression that Burns viewed himself as Hutchinson's lawyer,
notwithstanding the fact that the Florida LLC's paid for his
services. (See id.; see also id. at ¶ 56 (alleging that Meyer and
Richardson paid legal fees to the defendants "through the corporate
entities.").)  The plaintiffs allege that they were damaged by the
defendants' actions because: (1) the transactions are structured in
such that they may face personal liability on the mortgages; (2)
Burns knew about the cost overruns connect with the Western Lake
project, but "concealed" them from the plaintiffs; (3) Burns "knew
of and was complicit in" Hutchinson's failure to make capital
contributions; (4) plaintiffs have spent over $50,000 to date in
the various lawsuits arising from their dispute with Hutchinson,
which they allege "is predicated on actions that were directed,
orchestrated and concealed by Burns;" and (5) the plaintiffs paid
the defendants' legal fees "through the corporate entities," but
only Hutchinson received the benefit of their undivided loyalty.
(See id. at ¶¶ 44-56.)

The plaintiffs' three-count complaint asserts claims for
professional negligence (Count I), breach of fiduciary duty (Count
II), and aiding and abetting Hutchinson's breach of his fiduciary
duties to the plaintiffs (Count III).  The defendants have moved to
dismiss the complaint for lack of personal jurisdiction, or in the
alternative, improper venue.

- 5 -

## A.    Personal Jurisdiction

"The plaintiff has the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. At this stage, therefore, we take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010) (internal citation omitted). "A federal court exercising diversity jurisdiction has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction." Philos Technologies, Inc. v. Philos & D, Inc., 645 F.3d 851, 855 n.2 (7th Cir. 2011). Illinois's long-arm statute authorizes personal jurisdiction to the extent permitted by the Illinois Constitution and the United States Constitution. 735 Ill. Comp. Stat. 5/2-209(c). Our Court of Appeals has held that "there is no operative difference between these two constitutional limits." Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A., 623 F.3d 440, 443 (7th Cir. 2010). So, a single due process analysis under the federal Constitution will suffice. Id. "The key question is therefore whether the defendants have sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of

- 6 -

fair play and substantial justice.'" <u>Tamburo</u>, 601 F.3d at 700-701

(quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)

(internal quotation marks omitted in original)).

We conclude that the defendants are not subject to general

jurisdiction in Illinois. "A defendant with 'continuous and

systematic' contacts with a state is subject to general

jurisdiction there in any action, even if the action is unrelated

to those contacts." <u>Id.</u> at 701 (quoting <u>Helicopteros Nacionales de</u>

<u>Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984)). "The standard

for general jurisdiction is demanding because the consequences can

be severe: if a defendant is subject to general jurisdiction in a

state, then it may be called into court there to answer for any

alleged wrong, committed in any place, no matter how unrelated to

the defendant's contacts with the forum." <u>uBID, Inc. v. GoDaddy</u>

<u>Group, Inc.</u>, 623 F.3d 421, 426 (7th Cir. 2010). Burns states in

his affidavit that Hanft Fride does not have an Illinois office,

does not actively solicit business from Illinois residents, and its

attorneys do not regularly travel to Illinois to provide legal

services. (<u>See</u> Burns Aff. ¶¶ 5, 8, 9.) The plaintiffs have

attached to their response brief a document showing that Hanft

Fride lawyers (not including Burns) represented the plaintiff in a

case filed in the Central District of Illinois. They contend that

this lawsuit is sufficient to confer general jurisdiction over

Hanft Fride in Illinois, citing <u>Wartsila NSD North America, Inc. v.</u>

Hill Intern., Inc., 269 F.Supp.2d 547 (D.N.J. 2003). The law firm in that case was "retained to represent at least 14 different corporate clients with offices in New Jersey" over a ten-year period. Id. at 559. Whether even that level of activity in the forum state is sufficient to confer general jurisdiction is debatable — we note that none of the cases that the district court relied on in its discussion of personal jurisdiction actually held that the court had general jurisdiction over the defendant. See id. at 559-560. In any event, Wartsila is distinguishable because the record in this case does not indicate that the defendants maintain a comparable business presence in Illinois. Conceivably, a law firm might undertake to represent a client in a case so massive and time-consuming that it could be considered "essentially at home" in the forum state. Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2851 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.") (citing Int'l Shoe Co., 326 U.S. at 317)). But the Illinois case the plaintiffs cite is a straightforward breach-of-contract case that Hanft Fride filed on behalf a Minnesota company that performed some construction work in Illinois. See EBI Directional Drilling, Inc. v. Fidelity & Deposit Company of Maryland, Case No. 3:10-cv-3165

- 8 -

(C.D. Ill.) (Am. Compl., DKT # 51).  We do not believe that this sufficient to confer jurisdiction over Hanft Fride in Illinois for "any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum."  uBID, 623 F.3d at 426.  This conclusion applies with even greater force to Burns, who was not involved in the one case the plaintiffs have identified that Hanft Fride filed in Illinois.

Alternatively, the plaintiffs argue that the defendants are subject to specific jurisdiction.  "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities."  Tamburo, 601 F.3d at 702.  Plaintiffs chiefly rely on Ores v. Kennedy, 578 N.E.2d 1139 (Ill. App. Ct. 1991) to support their argument that the defendants are subject to specific personal jurisdiction in this court.  The third-party plaintiffs in Ores, an Illinois law firm and one of its attorneys, were sued for malpractice in connection with a will and trust agreement that they drafted for a former Illinois resident, who was residing in Texas at the time of his death.  Id. at 1141.  Specifically, the decedent's estate alleged that the third-party plaintiffs' negligence caused the estate to incur excess tax liability in a sale of the decedent's stock.  Id.  The third-party plaintiffs sued Alan Golden, an attorney based in Texas, for contribution based

upon his role in the stock sale. Id. at 1141-42. The estate's executors, one of whom resided in Illinois, had retained Golden to admit the decedent's will and trust agreement to probate in Texas. Id. at 1142. In that connection, Golden corresponded and had telephone conversations with the estate's Illinois executor and others in Illinois. Id. The third-party plaintiffs submitted evidence showing that Golden participated in approximately 20 telephone calls regarding the stock sale, and sent two letters to Illinois recipients on the same subject. See id.; see also id. (referring to additional telephone conversations and letters between Golden and the estate's Illinois executor, presumably about other matters). The Ores court concluded that these contacts were sufficient to support specific personal jurisdiction in Illinois, even though Golden had never traveled to Illinois in connection with his representation of the estate. See id. at 1144-45. Golden had directed numerous telephone calls and letters to Illinois while retained by the estate's Illinois executor, and "the essence of the third party plaintiffs' compliant [was] the nature or quality of Golden's representations and communications to [the estate's Illinois executor] during that time." Id. at 1145.

The general facts in Ores are similar to our own, but the plaintiffs here have made a much weaker case for exercising personal jurisdiction. Burns states that his contact with the plaintiffs "was either through Larry Hutchinson, or through correspondence directed to all members of the aforementioned LLC's,

or through a very limited number of telephone calls." (Burns Aff.
¶ 16.)   The plaintiffs chide Burns for being unspecific, (Pls.'
Resp. at 5), but they know how often they spoke with Burns and what
the contents of those communications were.   And yet, neither
plaintiff has supplied a declaration supporting their response to
the defendants' motion.   Burns's affidavit does not rule out the
possibility that he directed a sufficient number of relevant
communications to the plaintiffs in Illinois, but the plaintiffs
bear the burden to show that personal jurisdiction is present.   As
for the complaint itself, it only cites communications between
Burns, in Minnesota, and Hutchinson, presumably in South Carolina
or possibly Florida.   (See Compl. ¶ 42.)[1]

On this record, our case looks more like Coté v. Wadel, 796
F.2d 981 (7th Cir. 1986) than Ores.   In Coté, our Court of Appeals
held that a Wisconsin district court lacked personal jurisdiction
over a Michigan lawyer and his law firm in a malpractice lawsuit
filed by their Wisconsin client.   Id. at 982-83.   The plaintiff's
malpractice claim arose out of a lawsuit that the defendants had
filed on the plaintiff's behalf in Michigan.   Id. at 983-84.   The

---

[1]   The plaintiffs point out that an Illinois Circuit Court has concluded
that it has personal jurisdiction over Hutchinson in a suit filed by the
plaintiffs arising out of the same transactions that are the subject of their
complaint in this case.   See Order, Richardson v. Hutchinson, No. 10 CH 21301
(Ill. Cir. Ct. 2010), at 2-3.   The court relied on the routine communications
between the parties during their five-year business relationship and, "[m]ost
importantly," the fact that Hutchinson "solicited Scott Meyer in Illinois to make
an investment in real estate called Lot 4 Sand Hill at Watercolor."   Id. at 3.
The plaintiffs have not provided any evidence of the extent of their
communications with Burns, and he states without contradiction that he did not
solicit the plaintiffs' business.   (Burns Aff. ¶ 14.)

Court observed that the only significant connection between the malpractice suit and Wisconsin was the fact that the plaintiff lived there, "and you cannot get jurisdiction over a nonresident just by showing that you are a resident and would prefer to sue in your own state's courts." Id. at 984. It is somewhat more difficult to identify a particular location for the sort of transactional work that the defendants performed in our case. However, the most likely candidates are Minnesota (where Burns did the work (see Burns Aff. ¶ 10)) and Florida (where the Florida LLC's were formed), not Illinois.[2] The Coté Court further concluded that the "handful of letters and phone calls that passed between Coté and the Wadel firm [were] not enough to close the gap." Id. "Personal jurisdiction over nonresidents of a state is a quid for a quo that consists of the state's extending protection or other services to the nonresident, a feature lacking here." Id.; see also Afram Export Corp. v. Metallurgiki Halyps, S.A., 772 F.2d 1358, 1362 (7th Cir. 1985) ("[T]he defendant must derive some benefit from the state to balance the cost of exposure to suit in

---

[2]    Cf. Yates v. Muir, 492 N.E.2d 1267, 1269 (Ill. 1986) ("[T]he plaintiff retained services of an attorney who practiced in Kentucky. The matter on which the attorney represented the plaintiff was a Federal administrative claim which did not require the attorney to appear in any State court or Federal court in Illinois, or to have a license to practice here, or, for that matter, to be present in Illinois.  The legal services performed by the defendant were performed exclusively in Kentucky; if there was any malpractice in rendering those services it took place in Kentucky.  The neglect, if any, of the attorney was his failure in Kentucky to arrange for the filing of the appeal. When the instruments for the appeal were tardily prepared they were drawn in Kentucky. Though this may seem as much a metaphysical point as a legal one, this tardy preparation, as well as the neglect that was the basis of the malpractice action, took place in Kentucky.").

- 12 -

what is likely to be an inconvenient, perhaps even an unfriendly, forum."). The plaintiffs seem to argue that the defendants indirectly obtained the benefits of transacting business in Illinois by representing limited liability companies with Illinois members.[3] (Pls.' Resp. at 5-6.) But they have not cited any authority supporting that proposition, which comes close to the argument — rejected in Coté — that personal jurisdiction in a malpractice case is appropriate wherever the plaintiff lives. See Coté, 796 F.2d at 984. In sum, we conclude that the plaintiffs have not satisfied their burden to make a prima facie showing that the defendants are subject to personal jurisdiction in this court.

## B. Jurisdictional Discovery

We deny the plaintiffs' request for jurisdictional discovery. Our Court of Appeals has held that, "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000). The plaintiffs have not made even a colorable showing that Hanft Fride is subject to general jurisdiction in Illinois. Any discovery

---

[3] Burns states in his affidavit that he assisted Meyer and his family in forming M5 Capital, the Florida limited liability company that held Meyers' interests in Vermillion Point and H&M Partners. (Burns Aff. ¶ 17.) While this representation constituted a direct business relationship with an Illinois client, the plaintiffs' claims are not alleged to arise out of that representation. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1278 (7th Cir. 1997) (rejecting a "hybrid" of specific and personal jurisdiction that would aggregate all of a defendant's contacts with a particular plaintiff for purposes of establishing specific personal jurisdiction).

related to that issue would just be a fishing expedition. With respect to specific jurisdiction, there is no basis in the record to suspect that any other Hanft Fride lawyer, besides Burns, performed legal work for the plaintiffs in connection with the transactions discussed in the complaint. The most likely topic of discovery would be Burns' communications with the plaintiffs, a subject that the plaintiffs themselves are competent to testify about. The fact that they chose not to submit evidence supporting their response to the defendants' motion is not grounds to require the defendants to answer discovery.

## C. Venue

Even if we concluded that the plaintiffs had satisfied their burden to make a prima facie showing of personal jurisdiction, we would still dismiss this case for improper venue. "The plaintiff bears the burden of demonstrating that the venue it has chosen is proper." Harris v. comScore, Inc., No. 11 C 5807, 2011 WL 4738357, *1 (N.D. Ill. Oct. 7, 2011). The plaintiffs argue that "a substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C. § 1391(a)(2). Courts (including this court) have held that legal malpractice generally occurs where the defendant performed the legal work in question. See Cold Spring Harbor Lab. v. Ropes & Gray, LLP, 762 F.Supp.2d 543, 555-56 (E.D.N.Y. 2011); Circle Group Internet, Inc. v. Atlas, Pearlman, Trop & Borkson, P.A., No. 01 C 7338, 2002 WL 1559637, *3

- 14 -

(N.D. Ill. July 16, 2002). Burns states without contradiction that he performed the legal work he was contracted to perform in Duluth, Minnesota, where Hanft Fride's offices are located. (See Burns Aff. ¶ 10.) The plaintiffs do not attempt to rebut Burns's testimony. Instead, they focus on the communications between Burns and the plaintiffs in Illinois, citing Pasulka v. Sykes, 131 F.Supp.2d 988 (N.D. Ill. 2001). Pasulka involved a dispute arising out of a partnership agreement between the Illinois plaintiff and the out-of-state defendant. Id. at 991, 993. The Pasulka court denied the defendant's motion to dismiss for improper venue on the grounds that his communications with the plaintiff in Illinois, and the actions taken by the plaintiff in Illinois on his behalf, were "sufficiently connected to the cause of action to render venue proper in this district." Id. at 994. The plaintiffs argue that "[j]ust like the plaintiff in Pasulka, Plaintiffs in this case took actions based on Defendants' communications, which were sent to them in this judicial district." (Pls.' Resp. at 10.) The plaintiffs do not specify what "actions" they took — we assume they are referring to their investments in the Florida LLC's. In any case, they have not identified any particular communications from Burns. The most we can say on this record is that Burns (in Minnesota) communicated with the plaintiffs (in Illinois), presumably on matters related to the Florida LLC's. This is insufficient to establish venue here. See Cold Spring, 762

- 15 -

F.Supp.2d at 558 ("Courts analyzing venue in legal malpractice cases have required that the communications actually relate to the specific allegation of malpractice, not the underlying action or document generally."); cf. Circle Group, 2002 WL 1559637, *3 ("The two meetings in Illinois, and defendants' communications with Circle Group by telephone, fax, mail, and e-mail, are more tangential than substantial and are thus insufficient to establish venue here."). In sum, the plaintiffs have not satisfied their burden to show that venue is proper in this district.

## CONCLUSION

The defendants' motion to dismiss (9) is granted. We conclude that we lack personal jurisdiction over the defendants, and that venue is improper in this district. The plaintiffs' complaint is dismissed without prejudice to refiling in another jurisdiction.

DATE:          March 28, 2012


ENTER:         _____
               John F. Grady, United States District Judge